**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Joseph Haniffy

    v.                          Civil No. 08-cv-268-SM

Richard Gerry, Warden,
New Hampshire State Prison

**O R D E R**

    Pro se petitioner Joseph Haniffy has filed a petition for a writ of habeas corpus (document no. 1), pursuant to 28 U.S.C. § 2254, challenging his criminal conviction.  In July 2008, the petition initially came before me for preliminary review.  See Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules") (requiring initial review to determine whether the petition is facially valid); see also United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2) (authorizing the magistrate judge to preliminarily review pro se pleadings).  I stayed this matter and directed Haniffy to return to the state courts to exhaust his unexhausted claims, and to file status reports notifying this Court of his progress in the state courts (document no. 3).  Haniffy complied with that order and returned to the state courts

to exhaust his federal habeas claims, filing status reports here as directed. Haniffy then returned to this Court seeking to lift the stay and proceed in this matter (document no. 8). The stay was lifted on July 30, 2009. The matter is now before me to complete the preliminary review. See § 2254 Rule 4; LR 4.3(d)(2). As explained herein, I find that Haniffy has sufficiently demonstrated that the federal habeas claims raised in the petition have now been exhausted to allow this matter to proceed.

## Standard of Review

Under this Court's local rules, when an incarcerated petitioner commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v.

Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom.  See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005).  This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

On September 21, 2005, Haniffy was convicted, after a jury trial held in the Merrimack County Superior Court ("MCSC"), of felony sexual assault charges.  On January 6, 2006, Haniffy was sentenced to 7 ½ – 20 years to serve in the New Hampshire State Prison.  A second sentence of 10 – 20 years was suspended.  Haniffy filed a direct appeal of his conviction in the New Hampshire Supreme Court ("NHSC").  The NHSC affirmed Haniffy's conviction in an unpublished opinion on August 6, 2007.  See State v. Haniffy, No. 2006-0083, slip op. (N.H. Sup. Ct. Aug. 6, 2007).

On October 11, 2005, Haniffy filed a motion for a new trial in the MCSC, raising the issue of juror exposure to prejudicial extrinsic evidence during the jury's deliberations. Specifically, Haniffy complained that his cell phone was admitted in evidence and sent to the jury room. The phone's screen displayed the words "Joe Pimp" when the phone was turned on. The fact that petitioner had, at least on the screen of his phone, adopted that moniker was not in evidence in the case and Haniffy argued that exposing the jury to that information was prejudicial enough to warrant a new trial. The motion was denied without a hearing on November 23, 2005.

On January 25, 2008, two years and nineteen days after he was sentenced, Haniffy filed a Motion to Retrieve Evidence in the MCSC, seeking access to the cell phone so that he might catalogue its contents. Haniffy then asserted that, in addition to the name "Joe Pimp," a plethora of prejudicial content was in the cell phone and was improperly available for the jurors' perusal in the deliberation room, as that content was not in evidence. Haniffy argued that jurors admitted they heard other jurors make comments about the phone's contents in the deliberation room, and

that the jury's examination of the phone included the "phone book," emails, texts, and pictures.

On February 15, 2008, the cell phone was mistakenly delivered to defense counsel with other items belonging to Haniffy. Defense counsel searched through the phone and was able to document, in a memorandum, that the phone contained numerous highly prejudicial pictures, notably of women exposing their breasts and buttocks for the camera, a record of two calls to someone identified as "hot bitch" dated less than two weeks prior to the alleged sexual assaults, and titles for files and photos with crass names, such as "Very Nice Ass," "Girls Gone Wild," "Strippers," and "Fine Young Boobs." The phone was returned to the court on the prosecution's motion.

Haniffy asserts that the brief return of the phone to his attorney, and the memorandum she created of at least some of its contents, failed to satisfy the request made in his Motion to Retrieve Evidence, and that the evidence Haniffy sought in that motion was not retrieved. Haniffy asserts here, and asserted to the MCSC at the time he filed his Motion to Retrieve Evidence, that he was waiting on a ruling on his motion so that he could file a second motion for a new trial in that court, based on the

likely impact the highly prejudicial contents of the phone had on the jury. The MCSC finally denied Haniffy's motion to retrieve evidence on December 19, 2008, approximately eleven months after it was filed. The Clerk's notice advising Haniffy his motion had been denied was dated January 29, 2009, more than a year after the motion was filed, and three years and twenty-three days after Haniffy was sentenced.

On February 25, 2009, Haniffy filed a "Motion for New Trial II" in the MCSC. That motion argued that the extrinsic evidence given to the jury in Haniffy's cell phone, of which the jury was aware and which was not in evidence, violated Haniffy's state and federal constitutional rights.

The state objected to the Motion for New Trial II on the basis that it was untimely, having been filed on February 25, 2009, more than three years after Haniffy's January 6, 2006 sentencing.[1] The prosecutor further argued that the Motion for

---

[1] N.H. Rev. Stat. Ann. § 526:4 establishes time limitations for filing a petition for a new trial in the New Hampshire courts. Specifically, it states: "A new trial shall not be granted unless the petition is filed within three years after the rendition for the judgment complained of, or the failure of the suit." The three year period for filing a motion for new trial has been held to begin running at the time sentence is imposed in a criminal case. See State v. Looney, 154 N.H. 801, 803, 917 A.2d 1258, 1260 (2000) (finding that judgment is rendered in a criminal case on the date of sentencing, not when the conviction

likely impact the highly prejudicial contents of the phone had on the jury. The MCSC finally denied Haniffy's motion to retrieve evidence on December 19, 2008, approximately eleven months after it was filed. The Clerk's notice advising Haniffy his motion had been denied was dated January 29, 2009, more than a year after the motion was filed, and three years and twenty-three days after Haniffy was sentenced.

On February 25, 2009, Haniffy filed a "Motion for New Trial II" in the MCSC. That motion argued that the extrinsic evidence given to the jury in Haniffy's cell phone, of which the jury was aware and which was not in evidence, violated Haniffy's state and federal constitutional rights.

The state objected to the Motion for New Trial II on the basis that it was untimely, having been filed on February 25, 2009, more than three years after Haniffy's January 6, 2006 sentencing.[1] The prosecutor further argued that the Motion for

---

[1] N.H. Rev. Stat. Ann. § 526:4 establishes time limitations for filing a petition for a new trial in the New Hampshire courts. Specifically, it states: "A new trial shall not be granted unless the petition is filed within three years after the rendition for the judgment complained of, or the failure of the suit." The three year period for filing a motion for new trial has been held to begin running at the time sentence is imposed in a criminal case. See State v. Looney, 154 N.H. 801, 803, 917 A.2d 1258, 1260 (2000) (finding that judgment is rendered in a criminal case on the date of sentencing, not when the conviction

New Trial II was repetitive of the issues raised in Haniffy's first motion for new trial.  The MCSC denied the Motion for New Trial II on April 9, 2009.  Haniffy was notified of the denial by Clerk's Notice dated May 1, 2009.  The entire text of the denial is: "For the reasons stated in the State's objec., the court denies the deft's Motion for New Trial II.  The Court also concludes that a hearing is not necessary."

   Haniffy argues that the limitation period for filing a motion for a new trial in his case should have been tolled during the pendency of his Motion to Retrieve Evidence.  The Motion to Retrieve Evidence was filed in January 2008, well within the three year limitations period for seeking a new trial.  Haniffy reasonably expected a faster decision on that motion than he obtained, and had advised the trial court that he was awaiting a resolution of the evidence retrieval issue in order to pursue another new trial motion.  In his Motion for New Trial II, Haniffy argued that the three year limitations period for the motion should be tolled by the lengthy delay in rendering a decision on the Motion to Retrieve Evidence, but the trial court apparently declined to toll the deadline.

---

and sentence become final by virtue of the resolution of an appeal).

Haniffy filed a timely notice of appeal of the denial of the Motion for New Trial II in the NHSC.  His notice of appeal advised the NHSC that he had been denied any hearing or timely ruling by the trial court on his Motion to Retrieve Evidence, preventing the timely filing of his Motion for New Trial II, which the trial court then denied as untimely filed.  The notice of appeal also laid out the state and federal constitutional arguments challenging the trial court's denial of a new trial, based on the jury's access to and consideration of extrinsic non-evidence that was highly prejudicial to Haniffy.

## Claims[2]

In the instant petition, Haniffy raises the following claims for relief:

1. Haniffy's due process and fair trial rights, guaranteed by the Sixth and Fourteenth Amendments, were violated when the Court allowed his codefendants to testify at his trial, which allowed the prosecution to improperly introduce the substance of hearsay statements of the codefendants into evidence.

2. Haniffy's due process and fair trial rights, guaranteed by the Sixth and Fourteenth Amendments, were violated when the trial court allowed the prosecution to

---

[2] The claims, as identified herein, will be considered to be the claims in this matter for all purposes.  If Haniffy objects to the claims as identified, he must do so by properly moving to amend his petition.

>    repeatedly violate its instructions regarding use of the codefendants' hearsay statements at trial.
>
> 3.  Haniffy's Sixth Amendment rights to a fair trial, to confront evidence against him, and to the effective assistance of counsel, as well as his Fourteenth Amendment due process rights, were violated when the jury was given access to, and actually examined and discussed, highly prejudicial content in Haniffy's cell phone during jury deliberations, although that information was not in evidence.

## Discussion

Under 28 U.S.C. § 2254, the federal courts are authorized to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." To be eligible for habeas relief, Haniffy must show that he is both in custody and has exhausted all state court remedies, or that he is excused from exhausting those remedies because of an absence of available or effective state corrective process. See 28 U.S.C. § 2254(a) & (b); see also Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 489-92 (1973); Benson v. Super. Ct. Dep't of Trial Ct., 663 F.2d 355, 358-59 (1st Cir. 1981).

A petitioner's remedies in New Hampshire are exhausted when the state's highest court has had an opportunity to rule on the

petitioner's federal constitutional claims.  See Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988) ("habeas corpus petitioner must have presented the substance of his federal constitutional claim to the state appellate courts so that the state had the first chance to correct the claimed constitutional error"); see also Picard v. Connor, 404 U.S. 270, 275 (1971) (requiring petitioner to have fairly presented the federal nature of his claims to the state courts to give them the first opportunity to remedy the claimed constitutional error).  "In order to exhaust a claim, the petitioner must 'present the federal claim fairly and recognizably' to the state courts, meaning that he 'must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000) (internal citations omitted)).  A petitioner may fairly present a claim by: (1) citing a provision of the federal constitution, (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim, (3) citing federal constitutional precedents, (4) claiming violation

of a right specifically protected in the federal constitution, or, in some circumstances, (5) citing to state court decisions that rely on federal law or articulation of a state claim that is indistinguishable from one arising under federal law.  Clements, 485 F.3d at 162 (citing Gagne v. Fair, 835 F.2d 6, 7 (1st Cir. 1987) and Nadworny v. Fair, 872 F.2d 1093, 1099-1100 (1st Cir. 1989)); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (A litigant wishing to raise a federal issue can exhaust the federal issue in the state courts "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); cf. Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988) (finding that simply reciting facts underlying a state claim, where those facts might support either a state or federal claim, without more, is clearly inadequate to constitute fair presentation of a federal claim to a state court).

   Haniffy's initial filing demonstrated that he has met § 2254's custody requirement, as he is incarcerated pursuant to the challenged convictions.  Haniffy's original petition, however, did not demonstrate exhaustion of the claims raised therein.  In response to my order to amend his petition, Haniffy has now filed

several status reports and addenda to his initial petition (document nos. 4-8)[3] demonstrating that he has fully exhausted each of these claims in the state court.

Haniffy exhausted his first two claims, regarding the codefendant testimony utilized at his trial in the direct appeal of his conviction. Haniffy's Motion in Limine #1, filed in the trial court, set out the federal nature of Haniffy's first claim, regarding the admission of the evidence, by reference to federal caselaw. That motion and a transcript of the arguments made thereon were submitted to the NHSC in support of his direct appeal. Similarly, Haniffy's second claim, regarding the prosecutor's conduct in utilizing the codefendant testimony at trial, was presented to the NHSC in the brief filed in support of Haniffy's direct appeal. The brief specifically directed the NHSC to federal caselaw identifying the federal nature of that claim.

As to his third claim, regarding the extrinsic cell phone evidence considered by the jury, Haniffy returned to the state courts to conduct post-conviction litigation during the pendency

---

[3]The initial petition (document no. 1) and the addenda filed thereto (document nos. 4-8) will be considered, in the aggregate, to be the petition in this action for all purposes.

of his direct appeal. That litigation continued until June 2009. In his Motion for New Trial II, filed February 25, 2009 in the trial court and forwarded to the NHSC along with Haniffy's notice of appeal of the denial of the motion, Haniffy sets out the federal constitutional claims now raised in his petition.

I note that here, Haniffy has raised three claims which, if all of the allegations in the petition are true, raise significant concerns about the fairness of the jury's verdict in this case. Haniffy alleges that extremely prejudicial information concerning the codefendants' testimony at trial was wrongly admitted and, once admitted, was improperly utilized by the prosecution. The prosecutor, it seems, intentionally pressed the limits of the courts' ruling in order to improperly present the improper evidence -- hearsay statements of the codefendants asserted for the truth of the matter asserted -- to the jury. Most concerning is that the trial judge seemed to recognize the impropriety of the evidence and the prosecutor's conduct, and, aside from warning the prosecutor that he was on thin ice, and expressing his reservations about the propriety of the testimony and evidence, did nothing to prevent the harmful information from being heard by the jury, and did nothing contemporaneously with

the testimony to ameliorate the impact of the inadmissible evidence or the gamesmanship of the prosecution on the jury.

Even more troubling, perhaps, is the trial court's apparent prioritization of form over substance in dealing with Haniffy's post-conviction litigation. It is difficult to understand how the trial court could fail to rule on Haniffy's motion to retrieve evidence for a year. The motion was a simple and straightforward motion upon which no hearing was scheduled, and was filed almost a year in advance of the motion for new trial deadline. The motion also notified the court, at the time it was filed, that it was being filed to gain information necessary for the preparation of a second new trial motion. It is hard to believe that the MCSC, thus notified, would fail to rule on the motion in time for Haniffy to file another new trial motion and would then, when the new trial motion was filed shortly after the ruling, fail to toll the limitations period to allow the motion to be considered timely filed. And yet, that is the procedural posture of this case.

The NHSC had the opportunity to correct the error by accepting the appeal and ruling on the substance of Haniffy's extrinsic evidence claim. Again, it is worth pointing out the

troubling nature of the extrinsic evidence which was, considered in the context of this trial, exceptionally prejudicial and irrelevant to any material issue in the case, and painted Haniffy in a negative light regarding his sexual temperament, and that Haniffy's arguments were squarely presented to the NHSC.  Where the cell phone contents were examined and discussed by the jury, it is difficult to see how a court, if it considered the substance of Haniffy's claim, would not be troubled by serious doubts as to the validity and fairness of the jury's verdict.

This is a case where the evidence did not clearly favor the prosecution.  Further, the credibility of the state's evidence was vigorously contested at trial.  Accordingly, the impact of inappropriately admitted and highly prejudicial evidence on the jury should be scrutinized by a court, particularly where, as here, the petitioner has been convicted of serious felonies and received a lengthy prison sentence.  It is extremely troubling that no court has yet considered the merits of these claims.  The failure to allow a full hearing of this issue indicates a misguided valuation of form over substance.

Conclusion

As Haniffy has alleged sufficient facts to demonstrate exhaustion of his federal constitutional habeas claims in the state courts, the petition shall be served upon the Respondent, the Warden of the New Hampshire State Prison.  Respondent shall file an answer or other pleading in response to the allegations made therein.  See § 2254 Rule 4 (requiring reviewing judge to order a response to the petition).  The Clerk's office is directed to serve the New Hampshire Office of the Attorney General, as provided in the Agreement on Acceptance of Service copies of this Order, my previous Order to amend (document no. 3), the original habeas petition (document no. 1) and the status reports and addenda filed in this matter (document nos. 4-8).[4]

Respondent is directed to answer or to otherwise plead within thirty days of the date of this Order.  The answer shall comply with the requirements of § 2254 Rule 5 (setting forth contents of the answer).

---

[4]Haniffy's initial petition (document no. 1) along with the addenda filed (document nos. 4-8) will be considered in the aggregate to be the petition filed in this matter for all purposes.

Upon receipt of the response, the Court will determine whether a hearing is warranted.  See § 2254 Rule 8 (providing circumstances under which a hearing is appropriate).

Petitioner is referred to Fed. R. Civ. P. 5, which requires that every pleading, written motion, notice, and similar paper, after the petition, shall be served on all parties.  Such service is to be made by mailing the material to the parties' attorney(s).

**SO ORDERED.**

_/s/ James R. Muirhead_
James R. Muirhead
United States Magistrate Judge

Date:   October 13,  2009

cc:    Joseph Haniffy, pro se

JM:jba