UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Joseph Haniffy,
        Petitioner

        v.                                  Civil No. 08-cv-268-SM
                                            Opinion No. 2010 DNH 014
Richard Gerry, Warden,
New Hampshire State Prison,
        Respondent

### O R D E R

Joseph Haniffy, a New Hampshire State Prison inmate, petitions for a writ of habeas corpus. 42 U.S.C. § 2254. Before the court is respondent's motion for summary judgment. Haniffy objects. For the reasons given, respondent's summary judgment motion is granted in part and denied in part.

### Background

Haniffy was convicted of three counts of aggravated felonious sexual assault in the New Hampshire Superior Court. Over Haniffy's objection, first raised in a motion in limine, the trial court admitted the testimony of Haniffy's codefendants, Christopher Armstrong and Cassidy Coburn. Haniffy's objection was based on his concern that the State would use Armstrong and Coburn to introduce inadmissable hearsay evidence.

On the fifth day of trial, Haniffy offered his cell phone into evidence, and it was duly admitted.  At the close of the evidence, the cell phone was sent into the jury room, along with the rest of the exhibits.  While deliberating, the jury sent out a note asking permission to turn the cell phone on.  Neither side objected.  Shortly after the jury rendered its verdict, the trial court became aware of a notation by a juror, left in the jury room along with the exhibits, indicating that when the phone was turned on, it displayed the name "Joe Pimp."

After conferring with counsel, the trial judge recalled the jury and conducted individual voir dire to determine what material, if any, the jurors discovered on the cell phone.  The judge asked each juror, under oath, whether he or she had seen, or had heard other jurors talk about the display that came up when the phone was turned on, photographs stored on the phone, names listed in the phone's directory, e-mails stored on the phone, or any other material stored in or displayed by the phone.

Each juror testified that he or she saw, or heard others mention, the name "Joe Pimp."  Juror #12, who turned the phone on, testified that she saw a New York Yankees' logo, and saw that there were photographs stored on the phone.  She also testified that she did not look through the photos.  The other eleven

2

jurors all testified that they neither saw nor heard about any photographs.  Juror #12 also testified that she saw the phone display a list of contacts, but that she did not read the list. Juror #10 testified that he heard something about Haniffy's girlfriend's name being displayed by the phone.  The other ten jurors all testified that they neither saw nor heard of a telephone directory or any names listed in such a directory. Juror #1 testified that he heard about some e-mail correspondence between Haniffy and his girlfriend stored on the phone.  The other eleven jurors all testified that they neither saw nor heard of any e-mail on the phone.  Each juror was asked whether he or she saw or heard about any other material on the phone, and none mentioned any material apart from that described above.

After the voir dire, Haniffy filed a motion for a new trial, arguing that "[t]he jury's exposure during deliberations to extrinsic evidence, whatever its source, is an error of constitutional proportions that is grounds for setting aside the verdict."  (Mot. Summ. J., Ex. F (document no. 14-5), at 1.) Specifically, Haniffy argued that "[t]he jurors' exposure to the name 'Joe Pimp' on [his] cellphone amounted to the jury being exposed to factual information outside of the record of the trial and this is an error of constitutional proportions that is grounds for setting aside the verdicts."  (Id. at 3.)  The trial

court denied Haniffy's motion in a thirteen-page order in which it analyzed the prejudicial effect of the name "Joe Pimp."[1]  (<u>See id.</u>, Ex. J (document no. 14-9).)  Subsequently, the trial court sentenced Haniffy to seven and a half to twenty years in the New Hampshire State Prison, with a second sentence of ten to twenty years deferred.

Haniffy appealed his conviction.  His notice of appeal listed ten issues, including these:

> 1. Did the Court err in denying the defendant's Motion in Limine #1 (Testimony of Armstrong and Coburn)?
>
> 2. Did the Court err in allowing the State to ask questions of the co-defendants that were designed to elicit inadmissible hearsay?
>
> 3. Did the Court err in denying the defendant's Motion for a New Trial?

(Status Report, Attach. 4 (document no 5-5), at 3.)  Of those three issues, Haniffy briefed only the first: "Whether the trial court erred in denying [his] motion to preclude the testimony of the co-defendants?"  With regard to that issue, the Supreme Court affirmed the trial court's decision to deny Haniffy's motion to exclude the testimony of Armstrong and Coburn.

---

[1] Because Haniffy's motion was based only on the "Joe Pimp" screen name, the court did not address any of the other material that Jurors 1, 10, and 12 said they saw or heard about.

In January of 2008, Haniffy filed a motion to retrieve evidence, namely the digital information contained in his cell phone.  By the middle of February, the phone was in the possession of Haniffy's attorney, who began to examine its contents and partially described them in a memorandum to the file.  (See Case Status Report, Ex. A (document no. 7-2), at 12-13.)  That memorandum was in Haniffy's possession no later than July of 2008.  It mentioned, among other things, records of two phone calls to someone called "hot bitch," photographs of women exposing their breasts, and photos or files with labels such as "Girls Gone Wild," "Fine Young Boobs," "Strippers," and "Very Nice Ass."  (Id.)  In July of 2008, and again in December of 2008, Haniffy asked the Superior Court to inform him of the status of his motion to retrieve evidence.  Then, in February of 2009, he filed a second motion for a new trial, arguing that his trial was constitutionally unfair because the jury was exposed to a variety of prejudicial extrinsic evidence contained in his cell phone.  The State objected, on grounds that Haniffy filed his motion after the expiration of the three-year time limit established by N.H. REV. STAT. ANN. § 526:4, and because he had already litigated the same issue in his previous motion for a new trial.  The Superior Court denied Haniffy's motion "[f]or the reasons given in the State's object[ion]."  (Id. at 7.)  Haniffy

appealed, and the state Supreme Court declined his notice of appeal.

As construed by the magistrate judge, Haniffy's petition for habeas relief consists of the following three claims:

1. Haniffy's due process and fair trial rights, guaranteed by the Sixth and Fourteenth Amendments, were violated when the Court allowed his codefendants to testify at his trial, which allowed the prosecution to improperly introduce the substance of hearsay statements of the codefendants into evidence.

2. Haniffy's due process and fair trial rights, guaranteed by the Sixth and Fourteenth Amendments, were violated when the trial court allowed the prosecution to repeatedly violate its instructions regarding use of the codefendants' hearsay statements at trial.

3. Haniffy's Sixth Amendment rights to a fair trial, to confront evidence against him, and to the effective assistance of counsel, as well as his Fourteenth Amendment due process rights, were violated when the jury was given access to, and actually examined and discussed, highly prejudicial content in Haniffy's cell phone during jury deliberations, although that information was not in evidence.

Order (document no. 9), at 8-9.)

## Discussion

A. Ground One

Haniffy says his federal constitutional rights to a fair trial and due process were violated by the trial court's decision to allow his codefendants to testify.  In his summary judgment motion, respondent points out that "petitioner did not raise [these] constitutional claims in his notice of appeal, nor did he raise them in his brief."  (Respondent's Memo. of Law, at 23.) But, respondent does not develop an argument based either on failure to exhaust available state remedies or on procedural default on independent and adequate state grounds.  Respondent does, however, argue that the New Hampshire Supreme Court "[made] factual findings that are relevant to any consideration of a claim of errors of a constitutional magnitude," (id.), and devotes several pages to a discussion of the state court's decision as consistent with prior state precedent, i.e., State v. Soldi, 145 N.H. 571 (2000).  Because the relevant portion of Soldi, the only authority cited in respondent's argument on Ground One, turns on an interpretation of the New Hampshire Rules of Evidence, see 145 N.H. at 573-74, respondent's argument on the merits does not include any federal analysis.  That is, respondent does not endeavor to show that the New Hampshire Supreme Court's decision was neither contrary to nor an unreasonable application of federal law.  Of course, whether the

7

state court's affirmance was consistent with <u>Soldi</u> says little about whether it was also consistent with United States Supreme Court precedent.  Petitioner, for his part, makes no argument at all but, rather, directs the court to his state-court filings.

While it does not seem likely that Haniffy can prevail on Ground One, respondent has not identified, much less developed, any bases for granting summary judgment in his favor.  Perhaps there is a meritorious argument to be made on failure to exhaust grounds, <u>see</u> <u>Pike v. Guarino</u>, 492 F.3d 61, 71 (1st Cir. 2007) (citing 27 U.S.C. § 2254(b)(1)(A)), or procedural default, <u>see</u> <u>Yeboah-Sefah v. Ficco</u>, 556 F.3d 53, 66 (1st Cir. 2009), but respondent does not invoke those theories.  Perhaps, too, a persuasive argument can be made on the merits, but respondent has not shown that the state court's resolution of the issue raised in Ground One was based on reasonable factual determinations, <u>see</u> 28 U.S.C. § 2254(d)(2), and was neither contrary to nor an unreasonable application of clearly established federal law, <u>see</u> 28 U.S.C. § 1154(d)(1).  The court declines to raise and develop legal points more appropriately left to the litigants, so, on this record, must deny summary judgment, given the points actually made.

B. Ground Two

Haniffy's second ground for relief is that his federal constitutional rights to a fair trial and due process were violated by the trial court's failure to enforce instructions it issued regarding the State's use of the codefendants' hearsay statements at trial.  In his summary judgment motion, respondent notes that petitioner waived that claim by failing to raise it in either his notice of appeal or his brief to the state Supreme Court.  In doing so, he cites two New Hampshire cases on waiver,[2] but, as with Ground One, does not develop an argument based on either failure to exhaust available state remedies, or procedural default.

He also argues that he is entitled to judgment on the merits of Ground Two, because the trial record demonstrates that the prosecutor did not violate the trial court's instructions.  But that argument identifies no relevant legal authority other than a single case describing the appropriate standard of review.  Petitioner makes no argument in opposition, but, again, simply

---

[2] State v. Ayer, 150 N.H. 14, 34 (2003) (explaining that "a mere laundry list of complaints, without developed legal argument, is insufficient to warrant judicial review"); State v. Blackmer, 149 N.H. 47, 49 (2003) (explaining that Supreme Court "confine[s] [its] review to only those issues that the defendant has fully briefed" and that "[a]n argument that is not raised in a party's notice of appeal is not preserved for appellate review").

directs the court to his state-court pleadings.  Because respondent's arguments regarding Ground Two suffer from similar infirmities as his arguments regarding Ground One, he is not entitled to summary judgment on Ground Two.

C. Ground Three

Haniffy's third ground for relief is that his federal constitutional rights to a fair trial, to confront evidence against him, to the effective assistance of counsel, and to due process were violated when the jury, during its deliberations, was exposed to highly prejudicial extrinsic evidence, in the form of content stored on his cell phone.  In his summary judgment motion, respondent argues that Ground Three is procedurally barred because Haniffy failed to raise it in his direct appeal and failed to file his second motion for a new trial on time.  He also argues that, even if Haniffy did not waive his extrinsic-evidence claim, the trial court correctly denied the first new-trial motion on the merits, and correctly rejected the second one on res judicata grounds.  Finally, respondent argues that the cell phone and its contents were not extrinsic evidence.

Haniffy counters respondent's procedural-bar argument by contending that the delay in filing his second new-trial motion was caused by the Superior Court's tardy response to his motion

to retrieve evidence.  And, petitioner further contends that under the circumstances of this case, the jury's exposure to extrinsic evidence entitles him to reversal of his conviction.

There are, in effect, two separate extrinsic-evidence claims in this case.  The first, raised in Haniffy's 2005 new-trial motion, is based on the jury's exposure to his cell-phone screen name.  The second, raised in his 2009 new-trial motion, is based on his claim that the jury was exposed to other material stored on his cell phone, including, but not limited to, the photographs and file names noted in his attorney's February, 2008, memorandum to the file.  The first claim has been procedurally defaulted, but the second has not.

### 1. The First Extrinsic-Evidence Claim

"It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.' " Cone v. Bell, 129 S. Ct. 1769, 1780 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729; citing Lee v. Kemna, 534 U.S. 362, 375 (2002)).  Thus, "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim

11

ordinarily qualifies as an independent and adequate state ground

for denying federal review."  Cone, 129 S. Ct. at 1780; see also

Yeboah-Sefah, 556 F.3d at 66); Walker v. Russo, 506 F.3d 19, 21

(1st Cir. 2007) ("Normally, the fact that a claim is procedurally

defaulted in state court is an adequate and independent state

ground precluding federal habeas relief.").

> A habeas claim is procedurally defaulted in either of
> two situations.  First, a claim is procedurally
> defaulted if the state court has denied relief on that
> claim on independent and adequate state procedural
> grounds.  See Lambrix v. Singletary, 520 U.S. 518, 522-
> 23 (1997).  Second, a claim is procedurally defaulted
> if it was not presented to the state courts and it is
> clear that those courts would have held the claim
> procedurally barred.  See Coleman v. Thompson, 501 U.S.
> 722, 735 n.1 (1991); Perruquet v. Briley, 390 F.3d 505,
> 514 (7th Cir. 2004).

Pike, 492 F.3d at 73 (parallel citations omitted).


Here, Haniffy raised an extrinsic-evidence claim, in

constitutional terms, in his 2005 new-trial motion.  And, he

listed the denial of his 2005 new-trial motion in his 2006 notice

of appeal.  But, ultimately, he did not brief the extrinsic-

evidence issue.  The New Hampshire Supreme Court steadfastly

enforces a procedural rule that provides, "[a]ll issues raised in

the defendant's notice of appeal but not briefed are deemed

waived."  State v. Dodds, 982 A.2d 377, 385 (N.H. 2009) (quoting

State v. Hofland, 151 N.H. 322, 327 (2004)).  Thus, any

12

extrinsic-evidence claim based on the "Joe Pimp" cell-phone screen name has been procedurally defaulted.  See Pike, 492 F.3d at 73.  That entitles respondent to summary judgment on Ground Three, to the extent that claim rests on the jury's exposure to the "Joe Pimp" screen name.  See Cone, 129 S. Ct. at 1780.


        2. The Second Extrinsic-Evidence Claim

    Haniffy's second extrinsic-evidence claim, i.e., the one based on the jury's purported exposure to prejudicial photographs and file names stored on his cell phone, stands on a different footing.  Haniffy raised that claim in his 2009 new-trial motion. In its order denying that motion, the trial court adopted the reasoning advanced by the State in its objection.  The State, in turn, advanced two theories: that the motion was untimely, and that it should be denied on the merits under the doctrine of res judicata.  Plainly, a party who failed to meet a statutory time limitation "failed to meet a state procedure requirement," Yeboah-Sefah, 556 F.3d at 66 (citation omitted), thus triggering application of the doctrine of independent and adequate state grounds, see Cone, 129 S. Ct. at 1780.  A state court's reliance on res judicata, however, "creates no bar to federal habeas review."  Id. at 1781.  Given the State's reliance on two legal theories, only one of which involved a procedural default, it is necessary to address Haniffy's second extrinsic-evidence claim on

13

the merits.  See Harris v. Reed, 489 U.S. 255, 263 (1989) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case ' "clearly and expressly" ' states that its judgment rests on a state procedural bar") (quoting Caldwell v. Mississippi, 472 U.S. 320, 327 (1985)).

Federal habeas corpus relief may be granted "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), has significantly limited the power of the federal courts to grant habeas corpus relief to state prisoners.

When a petitioner's claim "was adjudicated on the merits in State court proceedings," id., a federal court may disturb a state conviction only when: (1) the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2); or (2) the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1);
see also Williams v. Taylor, 529 U.S. 362, 399 (2000).

"AEDPA's strict standard of review only applies to a claim
that was adjudicated on the merits in state court proceedings."
Norton v. Spencer, 351 F.3d 1, 5 (1st Cir. 2003) (quoting Fortini
v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001); citing Ellsworth v.
Warden, 333 F.3d 1, 6 (1st Cir. 2003)).  "When the state court
has never addressed the particular federal claim at issue,
federal review is de novo."  Dugas v. Coplan, 506 F.3d 1, 7 (1st
Cir. 2007) (citing Pike, 492 F.3d at 67).  "As [the court of
appeals for this circuit has] noted, a federal court 'can hardly
defer to the state court on an issue that the state court did not
address.' "  Dugas, 506 F.3d at 7 (quoting Fortini, 257 F.3d at
47).

Determining the correct standard of review in this case
presents something of a conundrum.  On the surface, it would
appear that no state court has ever expressly ruled that
Haniffy's constitutional rights were not violated by the jury's
exposure to the photographs and file names in his cell phone.
That would seem to require de novo review.  But, on the other
hand, the trial court ruled that Haniffy's 2009 new-trial motion
was barred by res judicata, which is, essentially, a substantive

decision on the merits that entitles that decision to deference under AEDPA's strict standard of review.  Nevertheless, out of an abundance of caution, the court will give Haniffy the benefit of de novo review.  Even applying a standard of review most favorable to petitioner, however, respondent is entitled to summary judgment on Ground Three.

"The Sixth Amendment requires that the jury's verdict must be based solely upon the evidence developed at trial." United States v. Ofray-Campos, 534 F.3d 1, 18 (1st Cir. 2008) (citing Turner v. Louisiana, 379 U.S. 466, 472 (1965)).  Accordingly, "exposure to extrinsic information deprives a criminal defendant of the protections of the Sixth Amendment, including his right of confrontation, of cross-examination, and of counsel." Ofray-Campos, 534 F.3d at 18 (quoting United States v. Santana, 175 F.3d 57, 65 (1st Cir. 1999)).  Thus, a "jury's exposure during its deliberations to extrinsic information, whatever its source, is an error of constitutional proportions that is grounds for setting aside the verdict, unless the exposure was harmless." Santana, 175 F.3d at 65 (citations omitted).

Respondent is entitled to summary judgment on the second extrinsic-evidence claim in Ground Three for two reasons.  First, the material stored in Haniffy's cell phone was not extrinsic

16

evidence.  And, second, even if it were, the jury was not exposed
to it.


Extrinsic evidence is evidence other than that developed at
trial.  See Ofray-Campos, 534 F.3d at 18.  More specifically,
"[e]xtrinsic or extraneous influences include 'publicity received
and discussed in the jury room, matters considered by the jury
but not admitted into evidence, and communications or other
contact between jurors and outside persons.' " United States v.
Rodriquez, 116 F.3d 1225, 1227 (8th Cir. 1997) (quoting United
States v. Bassler, 651 F.2d 600, 602 (8th Cir. 1981)) (emphasis
added).  Jury exposure to such evidence runs afoul of the Sixth
Amendment because it "has not been subject to the procedural
safeguards of a fair trial." United States v. Perkins, 748 F.2d
1519, 1533 (11th Cir. 1984).


Haniffy's cell phone was admitted into evidence at trial —
indeed, it was offered by petitioner himself.  So, there can be
no argument that the admission of the cell phone was not subject
to the procedural safeguards of a fair trial.  The phone itself
was not extrinsic evidence.  See United States v. Rincon, 28 F.3d
921, 926 (9th Cir. 1994) (affirming trial court's determination
that allowing jury to view defendant next to surveillance
photograph after deliberations began did not expose jury to

17

extrinsic evidence because "all the evidence at issue, the surveillance photograph and Rincon himself, were presented to the jury during the trial prior to deliberations"); <u>United States v. Reithemeyer</u>, 206 F. App'x, 644, 646 (8th Cir. 2006) ("Because the tapes were admitted by stipulation, the argument that their contents could constitute extraneous or improper information before the jury must fail.") (citation omitted).

Moreover, once the cell phone was admitted, the jury was entitled to examine it without violating Haniffy's constitutional rights.  As the Ninth Circuit explained, in a proceeding under 28 U.S.C. § 2254:

> Bogle next contends that the trial court erred in permitting the jury to consider the result of its attempt to insert a key into the lock of a safe, both items being in evidence before it.  <u>See</u> <u>Turner v. Louisiana</u>, 379 U.S. 466, 473 (1965); <u>U.S. v. Navarro-Garcia</u>, 926 F.2d 818, 821 (9th Cir. 1991).  We conclude that the jury's actions did not constitute an impermissible jury experiment or the consideration of extrinsic evidence, because <u>a jury is permitted to examine all pieces of evidence carefully</u>, <u>United States v. Rincon</u>, 28 F.3d 921, 926-27 (9th Cir. 1994) . . . .

<u>Bogle v. Galaza</u>, 38 F. App'x 437, 438 (9th Cir. 2002) (emphasis added, parallel citations omitted); <u>see also</u> <u>United States v. Holmes</u>, 30 F. App'x 302, 310 (4th Cir. 2002) (rejecting as meritless criminal defendant's argument that jury developed facts not in evidence by using magnifying glass during deliberations);

18

cf. <u>United States v. Placensia</u>, 352 F.3d 1157, 1165 (8th Cir. 2003) (explaining, in direct appeal, that "as a general rule, jurors may examine any documents properly admitted into evidence"); <u>United States v. Beach</u>, 296 F.2d 153, 158-59 (4th Cir. 1961) (explaining, in direct appeal, that "the mere making of a more critical examination of an exhibit than was made during the trial is not objectionable").  As noted above, the jury in this case turned the cell phone on only after both the State and Haniffy assented to its request to do so.

Regarding the limits on what a jury may properly examine, the Tenth Circuit's opinion in <u>United States v. Byrne</u>, 171 F.3d 1231 (10th Cir. 1999), is instructive.  In that case, an atlas was introduced into evidence.  <u>Id.</u> at 1236.  The extrinsic evidence at issue consisted of several computer printouts that a juror found between the pages of the atlas.  <u>Id.</u>  Here, one may reasonably assume that Haniffy purposely entered the disputed material into his cell phone.  Thus, that material is analogous to the information printed on the pages of the atlas in <u>Byrne</u>, and is fundamentally different from the computer printouts slipped between the pages of that book.  In other words, just as the admission of a book necessarily entails admission of everything printed in it, admission of Haniffy's cell phone

necessarily entailed admission of all the information entered into it.

Haniffy's cell phone was properly admitted into evidence. The jury was, therefore, entitled to examine it.  Thus, neither the phone itself nor the material stored on it qualifies as extrinsic evidence.

Even if the material on Haniffy's cell phone is properly considered extrinsic evidence, however, the record created by the trial court conclusively demonstrates that the jury was not exposed to it.  Once the possibility of exposure to extrinsic evidence was brought to the attention of the trial court, the court immediately undertook a thoughtful and thorough investigation.  The court consulted with counsel for both parties and worked with counsel to formulate a series of questions to ask the jurors.  It put those questions to each juror, individually, under oath.  Each juror was asked about several types of material stored on the cell phone, and each was asked a final question about any other material to which he or she might have been exposed.  The jurors' responses, under oath, established that the jury was not exposed to the photographs and file names that form the basis for Ground Three.  That is sufficient.  Again, while not directly on point, Byrne is instructive:

> [T]he district court conducted an investigation
> regarding the extraneous material, including
> questioning the jury under oath.  This investigation
> revealed that a juror discovered several computer
> printouts containing profiles of minors who wished to
> engage in a homosexual relationship inside an atlas
> admitted into evidence.  After discovering the
> material, the juror promptly sent it out of the jury
> room without reading it.  Each juror testified that he
> or she did not read the extraneous material.
>
> Unlike a photograph, tape, object, or enactment, a
> juror must have read the printed information to
> comprehend its prejudicial content.  We hold that when
> extraneous printed material is sent out of the jury
> room promptly upon its discovery and each juror has
> sworn under oath that he or she did not read the
> material, there is <u>not even the slight[est] possibility</u>
> that the material affected the verdict.  Thus, we find
> no abuse of discretion in the district court's decision
> to deny defendant's motion for a new trial.

171 F.3d 1236.  Like the jurors in <u>Byrne</u>, the jurors in this case

testified under oath that they were not exposed to the purported

extrinsic evidence.

Because the evidence petitioner claims to have been

prejudiced by was not extrinsic evidence, and, alternatively,

because the jury was not exposed to it, respondent is entitled to

judgment as a matter of law on the remainder of Ground Three,

<u>i.e.</u>, the extrinsic-evidence claim based on cell-phone

photographs and file names.

## Conclusion

For the reasons given, respondent's motion for summary judgment (document no. 14) is granted with respect to Ground Three, but denied without prejudice with respect to Grounds One and Two.


**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

January 26, 2010

cc: Joseph Haniffy, <u>pro</u> <u>se</u>
    Elizabeth C. Woodcock, Esq.